UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL B. WILLIAMS,                       Case No. 1:15-cv-269
    Plaintiff,                                         Dlott, J.
                                                               Litkovitz, M.J.
    vs.

CCPI, INC.,                                      **REPORT AND**
    Defendant.                              **RECOMMENDATION**

This matter is before the Court on plaintiff's motion to remand this case to state court (Doc. 8), defendant CCPI, Inc.'s memorandum in opposition to plaintiff's motion (Doc. 11), and plaintiff's reply memorandum in support of the motion (Doc. 12).[1]  For the reasons stated herein, plaintiff's motion should be granted.

**I.  Procedural background**

    **A.  Removal of the case**

In March 2015, plaintiff Michael B. Williams filed a complaint for breach of contract, unjust enrichment, and declaratory judgment in the Clinton County, Ohio Common Pleas Court against his former employer, defendant CCPI, Inc. (hereafter "CCPI").  (Doc. 3).  The complaint alleges that plaintiff is entitled to severance payments under the terms of an employment agreement between the parties.  CCPI removed the case to this Court pursuant to 28 U.S.C. §§ 1331 and 1441(a) on the ground the severance provision in the employment agreement is an employee welfare benefit plan that is governed by the Employee Retirement Income and Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*; therefore, plaintiff's claims arise under federal law and the federal court has original jurisdiction

---

[1] Defendant's motion to dismiss the complaint is also pending.  (Doc. 7).  That motion has been stayed pending resolution of the motion to remand.  (Doc. 10).

over the case.[2] (Doc. 1).

### B. Plaintiff's motion for remand

Plaintiff filed his motion for remand on May 18, 2015. (Doc. 8). Plaintiff argues that the federal court lacks subject matter jurisdiction over his complaint because it alleges claims governed by Ohio law and no federal cause of action such as would vest the federal court with subject matter jurisdiction under 28 U.S.C. § 1331. (*Id.* at 1-2). Plaintiff alleges that the employment agreement at issue, which provides for severance payments in the event of plaintiff's termination without cause or his resignation for "Good Reason," is a contract that is governed by Ohio law, and not an ERISA plan. (*Id.* at 3). Plaintiff contends that because subject matter jurisdiction is lacking, defendant improperly removed the case to federal court and it must be remanded to state court. Defendant alleges that the severance provision of the parties' employment agreement is an employee welfare benefit plan as defined under ERISA, 29 U.S.C. § 1002(1)(B). (Doc. 11). Defendant contends that because plaintiff's claims concerning the payment of benefits under the purported ERISA plan raise issues of federal law, this case was properly removed. (*Id.*).

The issue to be resolved on a motion to remand is whether the district court lacks subject matter jurisdiction or, in other words, whether the case was properly removed from the state court. *Weil v. Process Equipment Co. of Tipp City*, 879 F. Supp.2d 745, 748 (S.D. Ohio 2012) (citing *Provident Bank v. Beck*, 952 F. Supp. 539, 540 (S.D. Ohio 1996)). The removal statute should be strictly construed and all doubts resolved in favor of remand. *Her Majesty The Queen v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989). The removing party bears the burden of demonstrating that the district court has jurisdiction over the case. *Weil*, 879 F. Supp.2d at 748 (citing *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 549 (6th Cir. 2006)).

---

[2] Section 1331 grants the district courts original jurisdiction over cases arising under the laws of the United States. 28 U.S.C. § 1331. Section 1441 provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant. . . ." 28 U.S.C. § 1441(a).

"[W]hen ruling on a motion to remand, a court generally looks to the plaintiff's complaint, as it is stated at the time of removal, and the defendant's notice of removal." *Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  In determining the propriety of removal, courts apply the "well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1983).  Under the well-pleaded complaint rule, subject matter jurisdiction exists only when an issue of federal law exists on the face of the complaint. *Id.*; *Husvar v. Rapoport*, 430 F.3d 777, 781 (6th Cir. 2005).  A corollary of the well-pleaded complaint rule is that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co.*, 481 U.S. at 63-64.  A case alleging a state law claim can be removed "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Weil*, 879 F. Supp.2d at 748-49 (quoting *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

ERISA is a statute that allows for complete preemption. *Id.* at 749 (citing *Aetna Health, Inc.*, 542 U.S. at 207).  ERISA broadly preempts state law claims insofar as they "relate to" any employee benefit plan as defined under the statute.  29 U.S.C. § 1144(a); *see also Smith v. Commonwealth General Corp.*, 589 F. App'x 738, 744 (6th Cir. 2014).  The phrase "relate to" is given broad meaning. *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 730 (1985); *Shaw v. Delta Airlines, Inc*., 463 U.S. 85 (1983)).  A state law claim is preempted by ERISA if "it has connection with or reference to that plan." *Id.*  A claim brought by a plaintiff under state law is *completely* preempted by ERISA if the claim seeks "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," as provided in 29 U.S.C. § 1132(a)(1)(B). *Lockett v. Marsh USA, Inc*., 354 F. App'x 984, 988 (6th Cir. 2009) (citations omitted).

*See also Wright v. Gen. Motors Corp.*, 262 F.3d 610, 613-14 (6th Cir. 2001). "Only if the [state law] claim is 'complete[ly] preempt[ed]' by ERISA, that is, when the action is to recover benefits, enforce rights or clarify future benefits under an ERISA plan, is the action subject to removal to the federal courts." *Wright*, 262 F.3d at 613 (quoting *Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir. 1995)). "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 469 (6th Cir. 2002).

Thus, to determine whether remand of this case is warranted, the Court must decide whether plaintiff seeks to enforce an ERISA agreement or to recover benefits due under the terms of an ERISA plan, or whether he seeks to recover damages for breach of a contract that is governed by state law. If plaintiff's claims are not claims for benefits or rights under an ERISA plan, they are not completely preempted by ERISA and this Court lacks subject matter jurisdiction over the claims. In the event subject matter jurisdiction is lacking, the case was not properly removed and it must be remanded to state court. To make this determination, the Court must consider the allegations of the complaint in light of the law governing the definition of an ERISA plan.

### C. Allegations of the complaint

Plaintiff makes the following allegations in the complaint: Plaintiff, a resident of Ohio, was employed by CCPI, a Delaware corporation with its headquarters and principal place of business in Ohio, from May 2001 through on or about November 8, 2014. (Doc. 3, ¶¶ 1, 2). In mid-2008, plaintiff was named CCPI's General Manger and shortly thereafter its President and CEO. (*Id.*, ¶ 7).

On January 1, 2011, the two parties entered into an employment agreement governing the terms and conditions of plaintiff's employment (hereafter "Employment Agreement"). (*Id.*, ¶ 8; Exh. 1). According to § 3(a) of the Employment Agreement, plaintiff's employment was to be for a five-year

term ending on January 1, 2016. (*Id.*, ¶ 9). The Employment Agreement included a Change-in-Control provision to motivate plaintiff to succeed in an effort to sell CCPI, which was an effort he had been asked to lead. (*Id.,* ¶ 8).

In December of 2012, Prospect Capital Corporation (hereafter "Prospect") became the controlling shareholder of CCPI. (*Id.*, ¶ 10). Prospect's acquisition of CCPI constituted a "Change in Control" under the terms of the Employment Agreement and triggered a "Change in Control" payment to plaintiff. (*Id.*, ¶ 11). To ensure plaintiff's continued service to CCPI, CCPI and plaintiff entered into a First Amendment to Employment Agreement dated December 10, 2012. (*Id.*; Exh. 2). Section 3(b) of the Employment Agreement as amended provides that if, during the term of the Employment Agreement, CCPI "terminates Employee's employment . . . other than for Cause . . . or if Employee terminates employment for 'Good Reason', the Company shall pay Employee an amount equal to two (2) year's base salary as in effect on the date of termination. . . ." (*Id.*, ¶ 12). Section 3(b) further specifies the following circumstances under which the employee shall have "Good Reason" to terminate his employment, provided certain conditions are not satisfied:

> (B) a material diminution in the Employee's authority, duties or responsibilities; (C) a material diminution in the authority, duties or responsibilities of the supervisor to whom the Employee is required to report, including a requirement that the Employee report to a corporate officer or employee instead of reporting directly to the Company's Board of Directors. . . .

(*Id.*, ¶ 13).

As of December 10, 2012, plaintiff served as CCPI's President and Chief Executive Officer. (*Id.,* ¶ 14). On January 7, 2013, plaintiff was named Chairman of the Board and Secretary. (*Id.*, ¶ 15). On July 10, 2014, CCPI's Board of Directors authorized CCPI to begin a lengthy restructuring program. (*Id.*, ¶ 23). On information and belief, in the ensuing weeks, Prospect and its Directors decided to remove plaintiff from his role as CEO. (*Id.*, ¶ 25). These parties informed plaintiff that his position

would no longer be needed after their restructuring program was completed. (*Id*., ¶ 27). Plaintiff acknowledged this was true under their plan. (*Id*., ¶ 27). A CCPI Board member agreed that plaintiff would be entitled to severance payments as provided under § 3(b) of the Employment Agreement. (*Id*., ¶ 28). The Board member also confirmed with plaintiff that his role had been reduced to that of an advisor who would assist with transitioning his duties to a Prospect consultant. (*Id*., ¶ 28). The members of CCPI's management were informed of Prospect's plan to eliminate plaintiff's role and transition him out of CCPI, and plaintiff confirmed with the CCPI Board member in writing the severance arrangement and terms of the transition to which the two had agreed. (*Id*., ¶¶ 31-33). Over the ensuing weeks, plaintiff reported directly to a Prospect consultant and lost any authority he had once held as President and CEO. (*Id*., ¶¶ 37-38). It also became clear to plaintiff that CCPI was not going to honor its obligation to pay him severance. (*Id*., ¶ 38).

On October 8, 2014, plaintiff gave CCPI notice that events giving him "Good Reason" to resign under the Employment Agreement had occurred; specifically, events had occurred that constituted a "material diminution in [his] authority, duties or responsibilities" and/or a "material diminution in the authority, duties or responsibilities of the supervisor to whom [he was] required to report, including a requirement that [he] report to a corporate officer or employee instead of reporting directly to the Company's Board of Directors." (*Id.*, ¶ 39). CCPI failed to cure any of these events within 30 days and instead delivered a letter to plaintiff denying "Good Reason" to resign existed or that severance was owed. (*Id*., ¶¶ 41, 42).

Plaintiff claims he did not resign from CCPI but was terminated. (*Id*., ¶ 43). He claims that under § 3(b) of the Employment Agreement, CCPI is therefore required to pay him an amount equal to twice his annual base salary in effect on the date of his termination. (*Id*., ¶ 44). Plaintiff claims that CCPI has failed to make those payments to date. (*Id*., ¶ 45).

### D. The parties' positions

Plaintiff's motion for remand turns on whether the severance provision of the Employment Agreement constitutes an ERISA plan. Plaintiff argues that the Employment Agreement lacks the fundamental requirement of an ERISA plan, which is the need for "an ongoing administrative program to meet the employer's obligation." (Doc. 8 at 5, quoting *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 848 (6th Cir. 2005)). To the contrary, plaintiff argues that the severance clause of the Employment Agreement does not involve any administrative scheme beyond cutting payroll checks, based on mechanical calculations, triggered by a single event. (*Id.* at 5-6). Plaintiff contends that the only case in the Sixth Circuit that is directly on point, *Evanoff v. Banner*, 526 F. Supp.2d 810 (N.D. Ohio 2007), demonstrates that the severance provision at issue is not an ERISA plan. (*Id*. at 6-7). Plaintiff further alleges that several other federal courts have held that the payment of severance benefits over time does not constitute an ERISA plan, and the fact that a determination was required as to whether plaintiff's termination was for cause is not sufficient to create an ongoing administrative scheme. (*Id*. at 7-8, citing cases). Finally, plaintiff alleges that the two primary cases on which defendant relies in support of its removal of this lawsuit under ERISA are distinguishable on their facts from this case. (*Id*. at 8-9, citing *Cassidy v. Akzo Nobel Salt*, 308 F.3d 613 (6th Cir. 2002); *Caldwell v. PNC Fin. Servs. Grp., Inc*., 835 F. Supp.2d 510 (S.D. Ohio 2011)). Plaintiff alleges that because the severance provision is not an ERISA plan, there is no federal jurisdiction and removal of the case to federal court was improper.

Defendant argues that removal was proper because the Employment Agreement is necessarily an ERISA plan under governing Sixth Circuit law. (Doc. 11). Defendant asserts that one-person plans may qualify as ERISA plans. (*Id*. at 1, citing *DuBrul v. Citrosuco N. Am., Inc.*, 892 F. Supp.2d 892, 906 (S.D. Ohio 2012) (one-person plan may qualify as ERISA plan where other factors are satisfied); *B-T Dissolution, Inc. v. Provident Life & Acc. Ins. Co*., 101 F. Supp.2d 930, 940 n.16 (S.D. Ohio 2000)

7

(purchase of several individual insurance policies with a common "employer rider" and a corresponding premium discount may qualify as an employee benefit plan covered by ERISA); *Evanoff*, 526 F. Supp.2d at 816, n.2 (agreement not excluded from ERISA coverage simply because it applied to only one person). Defendant contends that the severance provision of the Employment Agreement satisfies the two requisite elements of an ERISA plan: (1) employer discretion over the distribution of benefits, and (2) ongoing demand on the employer's assets. (*Id.* at 4, citing *Kolkowski*, 448 F.3d at 848; *Cassidy*, 308 F.3d at 616). Defendant alleges that first, it has "wide discretion over the distribution of [plaintiff's] severance benefits" because it was required to decide plaintiff's eligibility to receive severance benefits; specifically, it was required to determine whether plaintiff's authority, duties, or responsibilities had been "materially diminished" and whether plaintiff had "Good Reason" to resign. (*Id.* at 5-6, citing *Caldwell*, 835 F. Supp.2d at 517; *Toohig v. PNC Financial Servs. Group, Inc.*, No. 1:10-cv-657, 2010 WL 4824530, at *3 (N.D. Ohio Nov. 19, 2010) (also citing cases from other circuits)). Defendant alleges that second, the Employment Agreement created "an on-going demand on [its] assets" because the benefits were to be paid on a bi-weekly basis for 24 months. (*Id.* at 7-8, citing *Caldwell*, 835 F. Supp.2d at 517; *Kowlkowski*, 448 F.3d at 849; *Smith*, 589 F. App'x at 743; *Barrow v. Aleris Intern., Inc.*, No. 1:07-cv-110, 2007 WL 3342306, at *4 (W.D. Ky. Nov. 7, 2007)). Finally, defendant argues that plaintiff's reliance on *Evanoff*, 526 F. Supp.2d at 814-15, is misplaced because the plan administrator in that case had no discretion to determine the employee's eligibility for benefits. (*Id.* at 8). Defendant argues that in this case, its discretion to determine eligibility for benefits and the periodic and continuous demand on its assets qualifies the Employment Agreement as an ERISA plan.

Plaintiff argues in reply that defendant has no discretion over the distribution of severance benefits to him because once the triggering event occurs, CCPI has no discretion over whether to make the payments, the amount of the payments, and the timing of the payments; rather, defendant is simply

8

obligated to continue to pay plaintiff's salary for two years. (Doc. 12 at 3-4). Plaintiff further alleges that the second requirement of an ERISA plan is not satisfied because the payment of severance to him entails no distinct and ongoing administrative program. (*Id*. at 7-13). Plaintiff argues that defendant's discretion to determine whether an event triggering the payment of severance occurred, coupled with the continued payment of his salary over a distinct period of time, is not sufficient to create an ongoing administrative scheme. Plaintiff distinguishes the cases on which defendant relies and alleges there is no authority in the Sixth Circuit for finding that the payment of severance benefits pursuant to a clause in an employment contract under circumstances such as those present here is governed by ERISA. (*Id.* at 7-13).

## II. ERISA

ERISA, 29 U.S.C. § 1001 *et seq*., governs employee benefit plans. ERISA was enacted to protect employees from the "mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds." *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989). ERISA defines "employee welfare benefit plan" as "any plan . . . established or maintained by an employer . . . for the purpose of providing its participants . . . (A) . . . benefits in the event of . . . unemployment . . . or (B) any benefit described in section 186(c) of this title." 29 U.S.C. § 1002(1). Severance plans are included in the definition of employee benefit plans under 29 U.S.C. § 1002(1)(B); however, not all severance agreements qualify as ERISA plans. *Kolkowski*, 448 F.3d at 848 (citing *Cassidy*, 308 F.3d at 615-16) (citing *Sherrod v. General Motors Corp*., 33 F.3d 636, 638-39 (6th Cir. 1994)).

To distinguish an ERISA plan from a non-ERISA plan, the Court looks to the nature of the plan. *Cassidy*, 308 F.3d at 616 (citing *Swinney v. General Motors Corp*., 46 F.3d 512, 517 (6th Cir. 1995)). "The hallmark of an ERISA benefit plan is that it requires an 'ongoing administrative program to meet

the employer's obligation.'" *Swinney*, 46 F.3d at 517 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987))*; see also Hughes v. White*, 467 F. Supp.2d 791, 804-05 (S.D. Ohio 2006) ("The courts in severance package cases examine whether the plan in question had an administrative scheme in place, pre-termination, to distribute, calculate, and manage the benefits.")). The Court examines two primary factors in determining whether a plan for the payment of severance benefits is an ERISA plan: "1) whether the employer has discretion over the distribution of benefits, and 2) whether there are on-going demands on an employer's assets." *Kolkowski*, 448 F.3d at 848.

The plan administrator exercises discretion over benefit distribution if the administrator makes individualized determinations of eligibility and the level of benefits. *Kolkowski*, 448 F.3d at 848. If the plan requires the employer to "analyze each employee's particular circumstances in light of the appropriate criteria" to make a benefits determination, the severance plan is likely an ERISA plan. *Cassidy*, 308 F.3d at 616 (quoting *Sherrod*, 33 F.3d at 638-39). Conversely, administrator discretion over benefit distribution is lacking where the benefits are predetermined or the plan provides for simple or mechanical determinations of benefits. *Id.* (citing *Sherrod*, 33 F.3d at 638-39). Other factors to be considered in ascertaining whether there is administrator discretion are whether the payment of benefits is dependent on the reason for the employee's termination and whether the employer has discretion to determine the cause of termination, both of which are factors that weigh in favor of finding an ERISA plan. *See Vaden v. Dekalb Telephone Co-op., Inc.*, 21 F. Supp.3d 901, 907-08 (M.D. Tenn. 2014) (discretion factor weighed in favor of finding severance pay policy was ERISA plan where instead of requiring simple or mechanical determinations policy gave employer wide latitude to determine the cause of an employee's termination and eligibility under the policy).

The Sixth Circuit has found the first prong to be satisfied in a number of cases cited by the parties. In *Kolkowski*, 448 F.3d at 848-49, the Sixth Circuit found the first prong was met where the

plan administrator "exercised discretion in determining benefits in two distinct ways, one more complex than the other," by deciding: (1) "whether the benefits offered by an acquiring company were 'at least comparable' to the prior benefits," and (2) computing each employee's seniority status in order to calculate the amount of severance pay and benefits due.  In *Cassidy*, 308 F.3d at 616, the Sixth Circuit determined that the severance policy before it involved "a degree of discretion, periodic demands on assets, and an administrative burden that ERISA's definition contemplates."  The severance policy generally provided for lump sum payments based on the employee's tenure with the company unless the company approved an alternate arrangement; some employees were permitted to choose between a lump sum payment and a two-year salary continuation period; upon approval of alternate arrangements for installment payments, continuation of benefits had to be negotiated at the company's discretion; although benefits were generally formulaic, the company president had discretion to approve a larger amount in some cases; certain employees could choose between normal severance payments and a series of monthly payments that began at retirement age; the employee had to submit a written application in order to receive the retirement benefit; and released employees were permitted to extend their medical, dental and life insurance benefits and were entitled to career transition services.  *Id*. at 616-17.  *See also Caldwell*, 835 F. Supp.2d 518-19 (first prong met where plan required committee to make eligibility determination based on particular circumstances of each employee; committee was required to make benefit calculations for each participant that went beyond "mere simple or mechanical determinations" and involved examining each employee's circumstances and determining the retirement and insurance programs in which the employee participated to calculate the lump sum benefit; and the plan gave the committee administering the plan "full power and authority to interpret, construe and administer" the plan and to make binding and conclusive interpretations and decisions regarding the "timing, form, amount or recipient of any payment" under the plan); *Barrow*, 2007 WL 3342306, at *4 (severance plan

required discretion contemplated under ERISA so as to satisfy first prong where defendant was required to engage in a case-by-case review to determine employees' eligibility for benefits and although payment calculations were generally formulaic, the company had discretion to approve additional amounts in some cases); *Toohig*, 2010 WL 4824530, at *3 (the plan conferred substantial discretion over distribution of benefits where it was to be administered by a committee with full power and authority to interpret, construe and administer the plan and to oversee all actions under the plan, including the timing, form, amount or recipient of any payment under the plan).

In determining whether the second factor - ongoing demand on the employer's assets - is satisfied, the Court looks to whether the employer is responsible for "pay[ing] benefits on a regular basis, and thus faces . . . periodic demands on its assets that create a need for financial coordination and control." *Cassidy*, 308 F.3d at 616 (quoting *Fort Halifax*, 482 U.S. at 12); *Kolkowski*, 448 F.3d at 849. *See also Toohig*, 2010 WL 4824530, at *3 (to determine whether plan places ongoing demands on an employer's assets, "[t]he Court looks to whether the plan requires the employer to make payments on a regular basis, as opposed to a lump sum payment."). A severance benefit plan that provides for a one-time lump sum payment to employees of a predetermined amount does not place an ongoing demand on an employer's assets. *Sherrod*, 33 F.3d at 639. *See also Barrow*, 2007 WL 3342306, at *3 ("one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation" and is not an ERISA plan) (quoting *Fort Halifax,* 482 U.S. at 12) (one-time severance payment to employees in the event plant closed was not protected benefit plan under ERISA).

Conversely, the Sixth Circuit has found the second prong to be satisfied where the plan at issue provided for more than a one-time lump sum payment to terminated employees. In *Cassidy*, 308 F.3d at 616, the Sixth Circuit found that the severance plan at issue placed "periodic demands" on the employer's assets and thus qualified as an ERISA plan because the plan allowed employees to choose

12

between a lump sum payment or a two-year salary continuation and further permitted extension of medical, dental, and life insurance benefits. The Sixth Circuit in *Kolkowski*, 448 F.3d at 849, found that the plan at issue satisfied the "ongoing benefits" prong where the plan called for the continuation of medical, dental, and life insurance benefits for a period following termination for every involuntary termination over a two-year period after the lump-sum severance payout. *See also Caldwell*, 835 F. Supp.2d at 519 (plan constituted ERISA plan where it provided for bi-weekly payments to participants for a year in addition to a lump sum payment in lieu of employee benefits, the right to continued financial counseling services for certain employees, the right of participants to appeal the denial of benefits, and the potential for successful appellants to gain the right to the payment of severance benefits for an extended time period); *Barrow*, 2007 WL 3342306, at *4 (noting that "defendant's obligations are recurring as [more] employees are terminated," which "necessarily requires some ongoing administration."). *But see Nelson v. Gen. Motors Corp.*, 156 F.3d 1231 (Table), 1998 WL 415993, at *4 (6th Cir. July 7, 1998) (holding that continued coverage of health care benefits for six months after an employee's termination did not require an "additional, unique administrative scheme other than what was already in place for processing health care claims" and thus did not transform a voluntary termination plan that provided for the lump sum payment of severance benefits into an ERISA plan).

## III. Resolution

Upon consideration of the terms of the parties' Employment Agreement and the applicable case law, the Court finds that the balance of factors weighs against a finding that the severance provision constitutes an ERISA plan. As to the first factor - whether CCPI has discretion over the distribution of benefits - the Employment Agreement vests CCPI with discretion to determine plaintiff's eligibility for severance payments. The Employment Agreement provides that plaintiff is eligible for severance payments in the event of his (1) termination without cause, or (2) resignation for "Good Reason." (Doc.

8, Exh. 1 at 2). Thus, CCPI must exercise its judgment to determine whether plaintiff was terminated without cause or resigned for "Good Reason" and is thus entitled to severance benefits under the Employment Agreement.

However, the discretion to determine a single employee's eligibility for severance payments of the type specified in the parties' Employment Agreement has not been held sufficient in and of itself to satisfy the first prong of the *Kolkowski* test. Rather, ERISA contemplates a greater degree of discretion over the distribution of benefits than the Employment Agreement affords CCPI. The Employment Agreement vests CCPI with no discretion over the distribution of benefits once it determines whether the eligibility criteria established in the Employment Agreement are satisfied. Once that determination is made and plaintiff's eligibility is established, only the payment of a predetermined amount is required. That amount is established in the Employment Agreement as "two (2) year's base salary as in effect on the date of termination." (Doc. 8, Ex. 1 at 2). The Employment Agreement does not vest CCPI with any discretion to alter the level, amount, duration, or timing of benefits.

Thus, while the Employment Agreement requires more than a one-time lump sum payment, it does not entail more than "[s]imple or mechanical mathematical determinations" characteristic of non-ERISA plans. *See Cassidy*, 308 F.3d at 616 (quoting *Sherrod*, 33 F.3d at 638-39). *See also Evanoff,* 526 F. Supp. 2d at 815 (severance plan that provided the plaintiff would continue to receive his salary and regular insurance benefits for 18 months following his termination held not to be an ERISA plan; "[a]lthough[] the periodic distribution of checks requires more than a mere one-time payment, it requires nothing more than the simple mathematical computation emblematic of non-ERISA plans."). As such, the severance provision in the Employment Agreement is distinguishable from provisions which the Sixth Circuit and district courts have found vested the employer with sufficient discretion over the distribution of benefits to satisfy the first prong of the *Kolkowski* test. *See Kolkowski*, 448 F.3d at 848-

49 (first prong satisfied where the plan administrator performed more than a "simple, mechanical function" in calculating benefits and "exercised discretion in determining benefits in two distinct ways, one more complex than the other"); *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1410 (6th Cir. 1996) (defendant's severance pay plan, which included substantial severance payment and "continuation of medical benefits, professional re-employment assistance, and retirement 'grow-in' provisions, was an ERISA plan."); *Caldwell*, 835 F. Supp.2d at 518-19 (committee was required to make benefit calculations for each participant that went beyond "mere simple or mechanical determinations," the calculations involved examining each employee's circumstances, and the plan gave the committee full power to make decisions regarding the timing, form, amount or recipient of any payment under the plan); *Toohig*, 2010 WL 4824530, at *3 (discretion factor satisfied where plan committee was charged with "oversight of the actions made thereunder, including the timing, form, and amount or recipient of any payment to be made under the Plan."). Accordingly, the first factor to be considered - whether there is administrative discretion over the distribution of benefits - weighs against a finding that the severance provision in the Employment Agreement is an ERISA plan.

The second factor to be considered - whether the agreement creates ongoing demand on the employer's assets - likewise weighs against a finding that the Employment Agreement is covered by ERISA. Like the severance plan at issue in *Evanoff*, 526 F. Supp.2d at 815, the severance agreement between plaintiff and CCPI covers a single employee, requires that the employee's salary be continued for a specified time period, and requires no unique administrative scheme to coordinate and control the payment of salary in accordance with the terms of the Employment Agreement. The Employment Agreement requires only that if found eligible for benefits, plaintiff would continue to be paid his salary for a period of 24 months "in accordance with the normal payroll practices of the company. . . ." (Doc. 8, Exh. 1 at 2). There is no ongoing demand on defendant's assets such as would create an ERISA plan.

*Cf. Kolkowski*, 448 F.3d at 849 (plan met the ongoing demand prong because in addition to one-time lump sum payment of salary and bonuses to eligible employees, the medical, dental and life insurance benefits continued for a period after the payout and the plan covered every involuntary termination over a two-year period); *Caldwell*, 835 F. Supp.2d at 519 (plan provided for bi-weekly payments to participants for a year, the right to continued financial counseling services for certain employees, appeal rights, and potential for extended payment period for successful appellants).

In sum, the severance provision in the Employment Agreement is not an ERISA plan because (1) it does not give defendant sufficient discretion over the distribution of benefits, and (2) it does not create ongoing demand on the defendant's assets to the extent contemplated under ERISA. The Employment Agreement requires that defendant make a one-time eligibility determination for a single employee, who if found eligible will receive a predetermined amount of severance payments over a specified period of time in accordance with the company's established payroll practices. The Employment Agreement lacks the hallmark of an ERISA benefit plan, which is the requirement of an "ongoing administrative program to meet the employer's obligation." *Swinney*, 46 F.3d at 517 (quoting *Fort Halifax*, 482 U.S. at 11). Because the severance provision in the Employment Agreement is not an ERISA plan, plaintiff's state law claims are not completely preempted by ERISA and subject matter jurisdiction over plaintiff's state law claims is lacking. This matter should therefore be remanded to state court for resolution of plaintiff's state law claims.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's motion to remand this case to state court (Doc. 8) be **GRANTED.**

2. Defendant's motion to dismiss the complaint (Doc. 7) be **DENIED** as moot.

3. This case be **REMANDED** to the Clinton County, Ohio Court of Common Pleas.


Date:  10/13/15                              s/Karen L. Litkovitz
                                                                             Karen L. Litkovitz
                                                                             United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL B. WILLIAMS,   Case No. 1:15-cv-00269
    Plaintiff,   Dlott, J.
       Litkovitz, M.J.

vs.

CCPI, INC.,
    Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).